

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. WR-16,556-09

### EX PARTE KENNETH WAYNE THOMAS,[1] Applicant

## ON APPLICATION FOR POST-CONVICTION WRIT OF HABEAS CORPUS IN CAUSE NO. W86-85539-M(E) IN THE 194TH DISTRICT COURT DALLAS COUNTY

*Per curiam*.

## **O R D E R**

In September 1987, a jury found Applicant guilty of the offense of capital murder.

---

[1] In Applicant's initial direct appeal and habeas application, Applicant's name appeared as "Kenneth Dewayne Thomas." *See Thomas v. State*, No. AP-69,938 (Tex. Crim. App. June 8, 1994) (not designated for publication); *Ex parte Thomas,* No. AP-73,251 (Tex. Crim. App. Oct. 20, 1999) (not designated for publication). In later proceedings, Applicant's name appeared as "Kenneth Wayne Thomas" or "Kenneth Dwayne Thomas." *See, e.g., Ex parte Thomas,* No. AP-76,405 (Tex. Crim. App. Aug. 25, 2010) (not designated for publication). The current proceedings list Applicant's name as "Kenneth DeWayne Thomas." For consistency, we will use the name listed on Applicant's latest direct appeal, "Kenneth Wayne Thomas," as the reversal of that appeal is the basis for the current motion. *See Thomas v. State*, No. AP-77,047 (Tex. Crim. App. Dec. 5, 2018) (not designated for publication).

The jury answered the statutory punishment questions in such a way that the trial court set Applicant's punishment at death. This Court affirmed Applicant's conviction and sentence on direct appeal. *Thomas v. State*, No. AP-69,938 (Tex. Crim. App. June 8, 1994) (not designated for publication). On May 13, 1997, Applicant filed his initial application for a writ of habeas corpus pursuant to Article 11.071.[2] This Court denied Applicant relief. *Ex parte Thomas*, No. AP-73,251 (Tex. Crim. App. Oct. 20, 1999) (not designated for publication).

On May 1, 2003, Applicant filed his first subsequent habeas application (our -04) in which he alleged that he was mentally retarded and could not be executed under *Atkins v. Virginia*, 536 U.S. 304 (2002). We remanded the case to the convicting court. Once the case was returned to this Court, we reviewed the records and determined that Applicant had failed to show that he was mentally retarded. Therefore, we denied relief. *Ex parte Thomas*, No. WR-16,556-04 (Tex. Crim. App. Dec. 13, 2006) (not designated for publication).

On October 5, 2009, Applicant filed his second subsequent application (our -05) with the trial court. In a single allegation, Applicant alleged that he was entitled to relief from his death sentence because he presented significant mitigating evidence related to his moral culpability and the appropriateness of a death sentence which could not have

---

[2] Applicant's initial writ was our -03 writ. The -01 and -02 were both applications for writs of mandamus. Further, unless otherwise indicated, all references to Articles refer to the Code of Criminal Procedure.

been given full effect by the sentencing jury. *See Penry v. Johnson ("Penry I")*, 492 U.S. 302 (1989). This Court found that Applicant's claim satisfied the requirement of Article 11.071 § 5, but it denied relief in a written order. *Ex parte Thomas*, No. WR-16,556-05 (Tex. Crim. App. March 31, 2010). However, in light of this Court's subsequent decision in *Ex parte Smith*, 309 S.W.3d 53 (Tex. Crim. App. 2010), we reconsidered our decision and remanded the application to the habeas court for consideration of the merits of Applicant's claim.

The record after remand showed that the mitigating evidence presented by Applicant was the sort of evidence that this Court had said was not encompassed within the previous statutory special issues. *See Smith*, 309 S.W.3d; *Ex parte Moreno*, 245 S.W.3d 419 (Tex. Crim. App. 2008); *Ex parte Martinez*, 233 S.W.3d 319 (Tex. Crim. App. 2007). Applicant presented mitigating evidence at the punishment phase of trial tending to establish that he had limited intellectual ability, suffered from mental illness and brain damage, and had been victimized as a teenager in a violent assault. The Court granted Applicant a new punishment hearing. *Ex parte Thomas*, No. AP-76,405 (Tex. Crim. App. Aug. 25, 2010) (not designated for publication).

After a retrial on punishment, a jury answered the Article 37.071 questions in a manner requiring the trial judge to sentence him to death. On direct appeal, this Court reversed Applicant's death sentence. *Thomas v. State*, No. AP-77,047 (Tex. Crim. App. Dec. 5, 2018) (not designated for publication).

Pursuant to Article 11.071 §§ 4(a) and (b), and because the writ process runs concurrently with the direct appeal process, applicant's initial application for a writ of habeas corpus after retrial was due to be filed in the convicting court on or before February 9, 2017. *See* Art. 11.071 § 4(b). On January 11, 2017, Applicant timely filed his initial habeas application.[3] However, on April 28, 2017, he filed an "Amended Application," and on May 16, 2017, he filed a supplement to the amended application.

Recognizing that the habeas application is statutorily returnable to this Court and that the trial court is without authority to finally dispose of the writ, Applicant filed in this Court a motion to dismiss his Article 11.071 initial and amended applications for a writ of habeas corpus. *See* Art. 11.071 §§ 6(a), 11; *see also Ex parte Reed*, 271 S.W.3d 698, 727 (Tex. Crim. App. 2008) (recognizing the Court of Criminal Appeals as the ultimate factfinder in habeas corpus proceedings). In the motion, Applicant asserts that, because his trial was a punishment only retrial and because we reversed his sentence on direct appeal, the claims raised in the initial and amended applications are moot and the applications should be dismissed.

But Applicant's motion to dismiss is not as straightforward as it appears, and two issues must be addressed before we can properly rule on it. First, Applicant is correct that the Court's reversal on direct appeal of his new death sentence renders moot any allegations affecting that sentence. However, Applicant's initial or "Opening"

---

[3] This document was styled his "Opening Application for Writ of Habeas Corpus."

Application and the Amended Application both raise claims affecting the 1987 guilt/innocence trial in addition to claims affecting only his new punishment trial. And the claims affecting guilt/innocence are not rendered moot by a reversal of Applicant's sentence. Secondly, Applicant's Amended Application was not timely filed within the statutory period, thus, it is potentially a subsequent application subject to the requirements of Article 11.071 § 5. Likewise, the supplement to the amended application was filed outside of the statutory period and potentially suffers a similar fate.

We will first consider the appropriate characterization of the amended application and the supplement to the amended application. A review of these documents shows that Applicant, by these pleadings, purports only to add: (1) additional authority that issued after the initial ("opening") application on retrial was timely filed and after the statutory due date for filing had passed, and (2) argument regarding the applicability of that authority to claims raised in the initial application. Because neither document raises additional claims or improperly expands upon claims already raised, they should both be designated as supplements to be considered only as appropriate in resolving the issues raised in the initial application.[4] *See Ex parte Alvarez*, No. WR-62,426-01 (Tex. Crim. App. June 6, 2007) (not designated for publication) (holding that a supplemental document filed was not a subsequent application and should be considered (as

---

[4] The amended application adds authority and analysis regarding *Moore v. Texas*, 137 S. Ct. 1039 (March 28, 2017), and the supplement to the amended application adds authority and analysis regarding *Cathey v. Davis (In re Cathey)*, 857 F.3d 221 (5th Cir. May 11, 2017).

appropriate) in resolving the issues raised in the initial application).

Next, we look at the initial application itself. Regarding this application, we have determined that allegations one through thirteen affect punishment phase issues only and should be dismissed as moot. However, claims fourteen through sixteen assert error in the guilt phase of trial. These claims are not moot and they must meet the requirements of Article 11.071 § 5 before the merits may be considered.

In claim fourteen, Applicant asserts that he is actually innocent. In claim fifteen, he asserts that the State violated *Batson v. Kentucky*, 476 U.S. 79 (1986), in his 1987 trial by using its peremptory strikes on venire persons based on race. And in claim sixteen, Applicant asserts that his trial counsel was ineffective for failing to object to the State's alleged *Batson* violations. Because these claims could have been raised previously, they do not meet the requirements of Article 11.071 § 5, and they should be dismissed as an abuse of the writ without reviewing the merits of the claims.

Accordingly, we dismiss the Article 11.071 initial writ application on punishment retrial in this Court for the reasons set out above and order the trial court to take no further action on it. The "Amended Application" and supplement to the amended application are not Article 11.071 writ applications and should be otherwise disregarded.

IT IS SO ORDERED THIS THE 27TH DAY OF MARCH, 2019.


Do Not Publish